**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON GROSSINGER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-4700** |
| | : | |
| **GODADDY.COM, LLC,** | : | |
| **Defendant.** | : | |

# MEMORANDUM

**BEETLESTONE, C. J.** **AUGUST 7, 2026**

Brandon Grossinger, a repeat *pro se* litigant in this Court, filed this case asserting a claim under the Americans with Disabilities Act ("ADA") against GodDaddy.com, LLC. He also asserts claims for breach of contract and breach of an implied covenant of good faith and fair dealing; negligence; violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law; and conversion/interference with digital property and access. He seeks declarative and injunctive relief, the "emergency preservation of evidence," and an unspecified amount of money damages. Grossinger also seeks leave to proceed *in forma pauperis* and has filed two motions for temporary restraining orders. The Court will grant Grossinger leave to proceed without paying the fee for this case. Because his federal law claim is not plausible, the ADA claim will be dismissed, the state law claims will be dismissed for lack of subject matter jurisdiction, and the separately filed motions for emergency relief will be denied.

## I. FACTUAL ALLEGATIONS[1]

Grossinger asserts he is the Executive Director of Bunny's Flowers, Inc., a Pennsylvania nonprofit organization. (Compl. ¶ 2.) GoDaddy.com, LLC ("GoDaddy") is "a domain registrar, hosting provider, website-services provider and marketing services provider that conducts business nationwide, including with Pennsylvania customers." (*Id.* ¶ 3.) Grossinger's claims concern GoDaddy "account access, website hosting, domain administration, website deletion and restoration events, disputed billing, account provisioning, and related digital-access problems affecting [Grossinger] and Bunny's Flowers."[2] (*Id.* ¶ 7.) Grossinger alleges that he notified GoDaddy of "disability-related limitations and requested assistance and accommodation regarding access, communications, and continuity of services." (*Id.* ¶ 12.) He informed them "he was ill, medically disabled, and needed text or email communications and assurance that the account would not be deleted." (*Id.* ¶ 13.) He asserts that GoDaddy represented to him that his hosting account would not be deleted for a specific period after he requested disability-related assistance, "but the Bunny's Flowers website was nevertheless taken down on or around December 25."[3] (*Id.* ¶ 8.) Specifically, he claims that GoDaddy responded that he should not worry and that the account would not be deleted because there were still 14 days left for

---

[1] The factual allegations set forth in this Memorandum are taken from the Complaint, which contains repetitive content. (ECF No. 1.) The Court adopts the sequential pagination assigned to all pleadings by the CM/ECF docketing system.

[2] The Court does not understand Grossinger to attempt to allege any claim on behalf of the entity since he has already been advised that, as a *pro se* litigant, he may not do so in federal court. *See Grossinger v. Lichty*, No. 25-2510 (ECF No. 7 (order directing Grossinger to obtain counsel for the entity), ECF No. 13 (denying motion for reconsideration of order directing Grossinger to obtain counsel for the entity), ECF No. 41 (dismissing entity as plaintiff when Grossinger failed to obtain counsel to represent it)).

[3] Grossinger does not provide the year as part of the December 25 allegation. The Court assumes he refers to December 25, 2025 given the other dates he mentions.

Grossinger to renew the hosting plan. (*Id.* ¶ 14.) Despite this assurance, the Bunny's Flowers website was taken down on or about December 25th, causing disruption to nonprofit operations, public access, and Grossinger's ability to manage the organization's digital presence. (*Id.* ¶ 15.) He asserts that GoDaddy "did not provide clear, complete, and effective resolution of the disputed account-access, billing, deletion, restoration, and ADA-related issues." (*Id.* ¶ 19.) The website was later restored "without adequate notice, after [Grossinger] had spent substantial time attempting to rebuild or recover operational continuity." (*Id.* ¶¶ 9, 16.) Its services became inaccessible, difficult to manage, or "disputed in billing" for several websites that Grossinger names but does not otherwise describe. (*Id.* ¶ 10.)

Grossinger goes on to allege that he preserved screenshots reflecting his communications with GoDaddy, including its legal team. (*Id.* ¶¶ 17, 18; *see also id.* pages 9-20.) He sent "cross-vendor notice" to GoDaddy and Google on April 1, 2026 regarding account access, property access, provisioning, billing, preservation, disability-related accommodations, and related "service-lane issues." (*Id.* ¶ 20.) He requested continued communication by email and requested that relevant matters remain open while recovery and preservation efforts were ongoing. (*Id.* ¶ 22.) He uses GoDaddy services and tools to "create revenue-generating and accessibility-related business projects" to support himself, the nonprofit's operations, and related business efforts. (*Id.* ¶ 23.) The affected GoDaddy services "generated accessibility-related business content and marketing plans," including his "goals such as ADA compliance, awareness of online accessibility issues, and web-accessibility training." (*Id.* ¶ 26.) Access and continuity problems disrupted those business and nonprofit efforts and caused administrative burden. (*Id.* ¶ 27.) Certain "GoDaddy-created or GoDaddy-related service lanes" connecting to Google Workspace or GoDaddy-linked administrative services were also affected. (*Id.* ¶¶ 28-30.)

GoDaddy made or attempted to make recurring or disputed billing charges for services that Grossinger could not adequately access, manage, cancel, or verify due to the account-access problem. (*Id*. ¶ 31.) Some payment or charges affected a family member who provided him with payment assistance for limited expected charges and Grossinger asserts that he did not authorize larger or recurring charges. (*Id*. ¶ 32.) GoDaddy's conduct "and unresolved access problems impaired his ability to retrieve records, communicate with vendors, preserve evidence, and prepare legal materials." (*Id*. ¶ 34.) These issues affected Bunny's Flowers' nonprofit operations and his ability to develop revenue-generating work to support himself. (*Id*. ¶¶ 35-36.) The "harm was worsened by [his] documented disabilities, symptom flares, physical limitations, and reliance on digital systems as assistive technology." (*Id*. ¶ 37.) Grossinger seeks injunctive relief and unspecified compensatory damages. (*Id*. page 7.)

## II. STANDARD OF REVIEW

The Court grants Grossinger leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept

the facts alleged in the Complaint as true, draw all reasonable inferences in the Grossinger's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). ). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its

existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III. DISCUSSION

### A. ADA Title III Claim[4]

In Count I of his Complaint, Grossinger asserts an ADA claim against GoDaddy. The ADA has four subchapters, covering employment, public services, public accommodations and services operated by private entities, and "miscellaneous." *See generally* 42 U.S.C. §§ 12101-12203. Since GoDaddy is a private entity, any claim under the statute would fall under Title III. *See id*. § 12181(6) (defining the term "private entity" to mean "any entity other than a public entity (as defined in section 12131(1) of this title)" (*i.e.*, a state or local government or Amtrak)).

Private entities are barred from discriminating in Title III on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. *Id*. § 12182(a). A "public

[4] The analysis of Grossinger's ADA Title III claim against GoDaddy is incorporated from the Court's prior decision dismissing Grossinger's ADA Title III claim against Google LLC. *See Grossinger v. Google LLC*, No. 26-2039, 2026 WL 1662759 (E.D. Pa. June 9, 2026). In that decision, the Court dismissed ADA Title III claims brought against a defendant that, like GoDaddy, allegedly provided services exclusively through non-physical locations such as websites. *Id*. This case was filed on July 2, 2026, after the Court had ruled in *Google* that providers of web services with no physical locations are not subject to ADA Title III. Nonetheless, Grossinger has now filed the same implausible claim against GoDaddy.

Federal Rule of Civil Procedure 11 imposes obligations upon all litigants. By submitting a claim, an attorney or an "unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that the litigant's] claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Grossinger's bringing new claims based on a legal theory that has been rejected as implausible under the existing law of the Third Circuit does not comport with Rule 11's obligation.

accommodation" includes establishments such as hotels, restaurants, theaters, retail stores, service provider locations such as laundromats and pharmacies, museums, schools, day care or senior centers, and places of exercise or recreation. *Id*. § 12181(7). Acts of discrimination include, for example, imposing eligibility criteria that tend to screen out an individual with a disability, failing to make reasonable accommodations, failing to take steps to ensure that no disabled person is excluded, denied services, segregated or otherwise treated differently, and failing to remove barriers. *Id*. § 12182(b)(2). To state a claim under Title III of the ADA, a plaintiff must plausibly allege that: (1) he has a disability; (2) the defendant is a public accommodation within the meaning of the statute; and (3) he was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on his disability, which can include failure to reasonably accommodate his disability. *See Matheis v. CSL Plasma, Inc*., 936 F.3d 171, 175 (3d Cir. 2019); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002). A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman v. Patrick Indus., Inc*., 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)).

The ADA definition of "disability," applicable to the entire statute, provides that a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." *Id*. § 12102(1). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12102(2)(A).

A complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (cleaned up and citation omitted)). "A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). Grossinger has failed to allege facts to make plausible his ADA Title III claim against GoDaddy because he has failed to allege in the Complaint that he has a disability.

Stated simply, Grossinger fails to allege any facts about how or why he is disabled or how that disability limits a major life activity, rendering his ADA claim implausible.[5] *Accord*, *Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007) (*per curiam*) (affirming district court's dismissal of ADA claim where the plaintiff "failed to allege that he is a disabled person within the meaning of the ADA"); *Morrow v. S. Side Area Sch. Dist.*, No. 22-1142, 2023 WL 6260107, at *3 (W.D. Pa. Sept. 25, 2023) ("Plaintiff's Complaint asserts only that she 'was diagnosed with ADHD and anxiety in or about 2016.' . . . Even taking this allegation as true, a diagnosis standing alone is insufficient to establish a disability under the ADA.") (collecting cases); *Van Der Poel v. Mannheim Auto Auction*, No. 08-5607, 2009 WL 1754598, at *1 (E.D. Pa. June 18, 2009) ("Even accepting, as the Court must, all the allegations in the Complaint as true, Plaintiff's claim under the ADA fail[s] because Plaintiff has failed to allege that he is a disabled person within the meaning of the ADA. Specifically, Plaintiff fails to allege anywhere on the face of his

---

[5] The same pleading defect was a reason for dismissing Grossinger's claim against Google, *see Google LLC*, 2026 WL 1662759 at *7, but even though that decision was issued before Grossinger filed the instant Complaint, he failed to allege facts about his disability.

Complaint or attached letter that his cardiomyopathy and high blood pressure are physical or mental impairments which substantially limit one or more of his major life activities.”).

The Title III claim against GoDaddy is further rendered implausible because Grossinger has not alleged that GoDaddy provides a place of public accommodation. He alleges only that his claim involves his use of web-based products. Nowhere does Grossinger allege that an event occurred at a *physical* place of public accommodation where he suffered disability discrimination. Courts are split on the question of whether the term “public accommodation” requires a physical place or location. *See Peoples v. Discover Fin. Servs., Inc.*, 387 F. App’x 179, 183 (3d Cir. 2010) (describing split amongst the courts of appeals). Some courts apply the ADA to a good or service regardless of whether the service or privilege is connected to a physical location. *See*, *e.g.*, *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler’s Ass’n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) (finding that establishments of “public accommodation” are not “limited to actual physical structures”). These courts generally invoke Congress’s intent to ensure that people with disabilities have access to the same services enjoyed by people who are not disabled. *See Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed’n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (“The site of the sale is irrelevant to Congress’s goal of granting the disabled equal access to sellers of goods and services.”).

But the United States Court of Appeals for the Third Circuit, among other courts, has concluded that an actual, physical location is necessary. *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) (“The plain meaning of Title III is that a public accommodation is a place. . . .”); *see also Peoples*, 387 F. App’x at 183 (“Our court is among those that have taken the position that the term [“public accommodation”] is limited to physical accommodations.”);

*see also Parker v. Metro. Life Ins. Co*., 121 F.3d 1006 (6th Cir. 1997) (*en banc*) and *Weyer v. Twentieth Century Fox Film Corp*., 198 F.3d 1104 (9th Cir. 2000). These courts reason that all of the entities enumerated as examples of public accommodations in 42 U.S.C. § 12181(7), hotels, restaurants, theaters, laundromats, and the like, refer to physical places. *See Ford*, 145 F.3d at 612 (noting that requiring a physical location "is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"). Even though a physical place or location is required, the Third Circuit has held that a good or service provided by a public accommodation can be covered by the ADA as long as there is "some nexus between the services or privileges denied and the physical place. . . ." *Menkowitz v. Pottstown Mem'l Med. Ctr*., 154 F.3d 113, 122 (3d Cir. 1998).

Thus, for example, this Court has interpreted the Third Circuit's instruction that public accommodations are limited to physical places (or services with a nexus to a physical location) to mean that a website, on its own, is *not* a public accommodation within the meaning of the ADA. *See Mahoney v. Bittrex, Inc*., No. 19-3836, 2020 WL 212010, at *2 (E.D. Pa. Jan. 14, 2020) ("A website, by itself, is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *Walker v. Sam's Oyster House, LLC*, No. 18-193, 2018 WL 4466076, at *2 (E.D. Pa. Sept. 18, 2018) ("A website is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *Tawam v. APCI Fed. Credit Union*, No. 18-122, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018) (citing statutory definition of "public accommodation" in support of conclusion that the defendant's physical location, rather than its website, was the place of public accommodation). Since Grossinger alleges a claim based on his interaction with GoDaddy exclusively through web portals or other electronic means and fails to allege any nexus

between the services or privileges denied and a physical place, the public accommodation element has not been alleged plausibly under the law applicable in this Circuit.

Finally, Grossinger has failed to allege that GoDaddy discriminated against him in its provision of the services of a public accommodation *based on his disability*.[6] Even if a person is disabled, that does not mean that any action with negative impact on their lives happened *because* they are disabled. *See Riboldi v. Warren Cnty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (*per curiam*) (affirming district court dismissal of ADA claim where plaintiff "failed to allege facts plausibly indicating that he was denied benefits or services *on account of* his disability"); *Thomas v. Murphy Oil Corp*., 777 F. App'x 377, 380 (11th Cir. 2019) (*per curiam*) ("Plaintiff's bare conclusory allegations that Defendants discriminated against him based on his race or disability is not enough to avoid dismissal."); *J.A.M. v. Nova Se. Univ., Inc*., 646 F. App'x 921, 926 (11th Cir. 2016) (*per curiam*) ("J.A.M. failed to allege that Nova discriminated against him on account of his disability and, therefore, failed to state a claim under Title III."); *Lewis v. Adirondack Med. Ctr*., No. 24-376, 2024 WL 4448870, at *3 (N.D.N.Y. Oct. 9, 2024) ("[N]owhere in the complaint does Plaintiff suggest he did not receive Lake Placid Sports Medicine, PLLC's services *because of a disability* or that he was otherwise discriminated against on this basis"); *Chavous v. Hous. Visions Unlimited, Inc*., No. 22-811, 2022 WL 9967833, at *4 (N.D.N.Y. Oct. 17, 2022) ("Here, the complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant

---

[6] This pleading defect was also cited as a reason for dismissing Grossinger's claim against Google, *see Google LLC*, 2026 WL 1662759 at *8, but he failed to allege facts on this issue as well in the instant Complaint.

to Title III of the ADA."), *report and recommendation adopted*, 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023); *Brennan v. NCAComp Inc.*, No. 22-127, 2022 WL 4290660, at *8 (N.D.N.Y. Apr. 25, 2022) ("The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money," it does not "allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability."), *report and recommendation adopted*, 2022 WL 3097843 (N.D.N.Y. Aug. 4, 2022); *Tasambasis v. Pac. Aerospace Mach., Inc.*, No. 14-457, 2014 WL 12603098, at *1 (C.D. Cal. Apr. 4, 2014) (plaintiff's failure to allege he was denied access to any place of public accommodation on account of a disability rendered Title III claim implausible).

Because Grossinger fails to allege plausibly that he is disabled and that GoDaddy acted or refused to act because he is disabled, whether his claim is based on the provision of a public accommodation, the provision of a service, or otherwise, the claim is not plausible. Stated simply, Grossinger's core dispute with GoDaddy over the cancellation of the Bunny's Flowers website is a dispute that any person might have with a provider of data services regardless of a disability, and Grossinger does not plausibly allege that he has been subject to discrimination *because of* his disability. Accordingly, the Title III claims are dismissed. Moreover, because Grossinger does not allege that any services were provided at a physical location, the dismissal of the ADA claim will be with prejudice.

### B. State Law Claims

Grossinger also asserts breach of contract and other state law claims against GoDaddy. Having dismissed his federal law claim, the Court will not exercise supplemental jurisdiction

under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). The citizenship of an LLC like GoDaddy LLC "is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420. "[W]here an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC." *Id.* (internal quotations omitted). At the pleading stage, a plaintiff need not affirmatively allege the citizenship of an LLC if he alleges, after a reasonable investigation, that the members of the LLC are not citizens of his state of citizenship. *See Lincoln Benefit Life Co.*, 800 F.3d at 102. It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the

amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Also, the statute granting jurisdiction to the federal district court of actions between citizens of different states, § 1332(a), requires that the amount in controversy exceed the sum or value of $75,000, exclusive of interest and costs. Where a plaintiff does not allege any particular amount in controversy, he fails to meet his burden to demonstrate jurisdiction. *See Shah v. Vora*, No. 09-1294, 2010 WL 1076244, at *1 n.2 (D.N.J. Mar. 23, 2010) ("Plaintiff has not plead [sic] diversity jurisdiction, as she has not stated a particular amount in controversy."); *Johnson v. Hartford Ins.*, No. 09-2201, 2009 WL 1971152, at *1 (E.D. La. July 2, 2009) ("In cases originating in federal court, the plaintiff bears the burden of showing that the jurisdictional amount requirement is satisfied by his claim for relief."); *Grandoit v. Direct Merchants Bank*, No. 08-11276, 2009 WL 10694170, at *2 (D. Mass. June 25, 2009) ("The absence of a 'proper allegation of the amount in controversy' is a fatal defect when pleading grounds for subject matter jurisdiction."); *Bassett v. Toyota Motor Credit Corp.*, 818 F. Supp. 1462, 1465 (S.D. Ala. 1993) ("[A] complaint is fatally defective, as far as diversity jurisdiction is concerned, unless the complaint contains a proper allegation of the amount in controversy.").

Grossinger does not allege the citizenship of the parties. Grossinger also fails to allege a specific amount in controversy. He thus has not met his burden of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV. CONCLUSION

For these reasons, the Amended Complaint will be dismissed on statutory screening because Grossinger's claim under the ADA is not plausible and there is no jurisdiction over any state law claim. The Court concludes that any attempt at amendment of the ADA Title III claim

would be futile. Accordingly, that claim will be dismissed with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints on statutory screening with leave to amend "unless amendment would be inequitable or futile."). The Court will permit Grossinger to file an amended complaint if he is able to allege diversity of citizenship to assert his state law claims in this Court. Otherwise, he may bring his claim in state court where diversity of citizenship will not be an issue. An Order with additional information on amendment of the state law claims will be entered that also denies the pending motions for emergency relief since Grossinger has failed to show that he is likely to succeed on the merits of any claim. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65.

**BY THE COURT:**

**S/ Wendy Beetlestone**

**WENDY BEETLESTONE, C. J.**